### UHLAND v. UHLAND.

(Superior Court of New York City, Equity Term. February, 1894.)

DIVORCE—TESTIMONY OF CO-RESPONDENT.
    A co-respondent in an action for divorce on the ground of adultery is not justifiable in committing perjury in order to protect defendant's reputation, but he must either take advantage of his privilege to decline answering questions that may tend to criminate or degrade him, or else he must testify truthfully.

Action by Charles Uhland against Hester Uhland for divorce on the ground of adultery. Judgment for plaintiff.

J. H. Rogan, for plaintiff.
F. H. Richmond, for defendant.

McADAM, J. The defendant and co-respondent have been contradicted by so many material circumstances and in so many respects that the maxim, "falsus in uno, falsus in omnibus," destroys the reliability and value of their testimony. The evidence produced by the plaintiff, though largely circumstantial, when con-

sidered in detail and generalized, carries conviction as to the defendant's guilt, and establishes the plaintiff's right to relief. The position of the co-respondent merits notice. He undertook to make clear the fact that he was innocent of the wrongdoing charged, but signally failed in the task. He evidently supposed that, though guilty, he was performing a necessary duty in attempting to prove the contrary. This is not so. The first obligation of every individual is to abstain from familiarities or conduct which may connect his name with evil doing or the appearance of it. This is a duty owing to society, and, if observed, will prevent any person being connected with divorce scandals in the unenviable position of co-respondent. It will do more; it will stop divorces,—a desirable end. If, however, the individual so far forgets his duty as to do acts which connect him with such unpleasantries, he must, when he comes into a court of justice, testify to the truth, the whole truth, and nothing but the truth, or claim that privilege which is the right of every criminal,—to decline to answer questions that may tend to criminate or degrade him. A prevalent notion has gone abroad that a man found in flagrante delicto with a woman has her honor in his keeping, and is bound to defend it even to the extent of perjury. No such rule has ever found its way into morals or law, and such pretexts will not be tolerated for a moment as a defense to perjury. People who hold to such a sentiment are sadly in need of reformation. Chivalry and perjury are not convertible terms. It is far better that this be distinctly understood, that men may be deterred from liaisons, rather than have them believe that such things are safe, and they may, by perjury, crush truth or hide guilt. When such matters get into the courts, the public may depend upon it that the evidence will be sifted by experienced hands, and the truth reached, however difficult the ordeal may be. While the testimony of an interested party is competent, it is, nevertheless, weighted with interest, which impairs its value, unless it is corroborated, or so highly probable as to make it appear credible and believable. If a co-respondent declines to answer, he may, perhaps, be regarded by some as cowardly or unjust. If he answers straight out, he may be charged with appearing proud of his shame. But these are risks libertines must expect to brave. They owe their origin to the original sin, which is the thing to be avoided. Keep away from it. The position of the guilty, when exposed under the crucial test of judicial examination, is, indeed, an unhappy one. The penalty is heavy. The law has not endeavored to make it pleasant,—for it never encourages wrongdoing,—and has refrained from providing anything that makes it safe. Indeed, it is difficult to suggest any honorable way out of a dishonorable dilemma after you are in. With this admonition, which ought not to be without its lesson, the court must award the plaintiff that relief to which the law entitles him. Decree in favor of plaintiff.